# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF MICHIGAN

IN RE:

GEORGE HOLMES,

    Debtor.

_____/

Case No.: 14-04833-jwb

Chapter 7

Honorable James W. Boyd

IMMO US CORPORATION, a Pennsylvania corporation,

    Plaintiff

v

GEORGE HOLMES, an individual,

    Defendant.
_____

Adv. Proc. No.

---

## COMPLAINT TO DETERMINE DISCHARGEABILITY
## OF INDEBTEDNESS UNDER 11 U.S.C. § 523(a)(4)

---

Plaintiff IMMO US Corporation ("IMMO") states its complaint against George Holmes pursuant to 11 U.S.C. § 523 as follows:

### PARTIES, JURISDICTION AND VENUE

1.     IMMO is a Pennsylvania corporation authorized to do business in Michigan. IMMO has its principal place of business in Holland, Michigan.

2.     On July 17, 2014, Defendant George Holmes ("Holmes") filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code. Holmes resides at 823 Campbell Road, Saugtuck,, Michigan.

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.

4.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5. This matter is being brought as an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6).

## COUNT I
## 11 U.S.C. §523(a)(4)

6. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 5 of this Complaint.

7. Holmes was at all times relevant to this action the Executive Vice President of Lamar Construction Company ("Lamar"). Upon information and belief, Holmes was also, at all times relevant to this action, a shareholder and director of Lamar. By these positions and related activities, Holmes conducted business in the building construction industry.

8. On or about November 22, 2013, IMMO entered into a written contract with Lamar (the "Contract"), for the construction of an addition to a building located on John F. Donnelly Drive in Holland, Michigan (the "IMMO Project"). The IMMO Project is a project in the building construction industry.

9. Lamar, in turn, entered into subcontracts and supply agreements with numerous subcontractors and suppliers (collectively, the "Subcontractors") for portions of the work and materials to be completed/provided pursuant to the Contract.

10. Upon information and belief, the Subcontractors provided goods and/or services in connection with the Project and sent invoices to Lamar for payment.

11. IMMO made substantial payments (the "Trust Funds") to Lamar for goods and services supplied to the Project by the Subcontractors.

12. All Trust Funds paid by IMMO to Lamar were subject to the Michigan Building Contract Fund Act, MCL 570.151 et seq. ("MBCFA"). Lamar and Holmes held all Trust Funds in trust for the benefit of IMMO and the Subcontractors.

2

13. Holmes, in his capacity as Executive Vice President of Lamar, and in conjunction with Lamar's other shareholder and director (Carl Blauwkamp) and others, controlled the financial affairs of Lamar, and specifically decided which creditors of Lamar would be paid from any amounts received by Lamar, including from owners such as IMMO who hired Lamar to complete projects within the building construction industry.

14. Holmes, in his capacity as Executive Vice President of Lamar, and in conjunction with his fellow shareholder/director Carl Blauwkamp and others, was personally responsible for managing the day-to-day financial operations of Lamar, including without limitation, the following:

   a. Managing and monitoring Lamar's financial transactions, including financial transactions related to the IMMO Project;

   b. Ensuring that proper accounts were maintained by Lamar for all projects in the building construction industry, including the IMMO Project;

   c. Managing payments to Lamar's subcontractors, laborers, and material suppliers who performed services or provided goods for completion of Lamar's projects in the building construction industry, including the IMMO Project; and

   d. Managing the preparation and execution of Applications and Certifications for Payment for Lamar's projects in the building construction industry, including without limitation the IMMO Project.

15. Holmes has failed to pay and properly apply the Trust Funds to obligations owed to the Subcontractors for their work and/or goods supplied to the IMMO Project. Rather, upon information and belief, Holmes has either retained the Trust Funds for his own use, or used the Trust Funds to pay other, unrelated debts and obligations of Lamar and/or its agents.

16. Under the MBCFA, payments made by any person for a building contract to a contractor constitute a trust fund for the benefit of, among other persons, subcontractors, laborers and material men, and the contractor is a trustee of all funds so paid to him.

17. Holmes with respect to the IMMO Project, was a contractor subject to the MBCFA and, therefore, is a professional statutory trustee of all funds paid by IMMO to Lamar for the IMMO Project. Under the MBCFA, Holmes held all of the Trust Funds paid to Lamar by IMMO in Trust for the benefit of IMMO and the Subcontractors on the IMMO Project.

18. Holmes breached his fiduciary duties to IMMO by:

   a. Failing to properly segregate Trust Funds from Lamar's other accounts and financial affairs;

   b. Failing to use the funds received from IMMO for the IMMO Project to satisfy Lamar's obligations to the Subcontractors with respect to the IMMO Project; and

   c. Using Trust Funds to pay his own debts and or to pay other debts and obligations of Lamar and/or its agents.

19. Holmes's intent with respect to the acts and omissions set forth above is irrelevant, but to the extent that such intent may be deemed relevant, Holmes knew that his conduct was improper and/or disregarded a substantial and unjustifiable risk that his conduct violated his fiduciary duties under the MBCFA.

20. Holmes's acts and omissions, as set forth above, constitute "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" within the meaning of 11 U.S.C. § 523(a)(4).

21. As a result of Holmes's acts and omissions, as set forth above, IMMO has suffered damages in an amount greater than $ 670,000.

WHEREFORE, Plaintiff IMMO US Corporation requests that this Court enter a money judgment in its favor and against Holmes in an amount greater than $670,000, hold that the amount of such judgment is non-dischargeable under 11 U.S.C. § 523(a)(4), and award IMMO all allowable costs, interest and attorney fees.

## COUNT II
## 11 U.S.C. 523(a)(6)

22. IMMO incorporates by reference the allegations of all preceding paragraphs.

23. The Trust Funds are specific funds that were entrusted to Holmes's care by and for the benefit of IMMO.

24. Holmes converted IMMO's property by failing and refusing to pay over to IMMO or the Subcontractors the Trust Funds that belonged to IMMO, and/or by using the Trust Funds for other purposes.

25. Holmes received, possessed, concealed, or aiding in the concealment of IMMO's property.

26. Holmes knew, at all relevant times, that the converted property was the property of IMMO.

27. Holmes's conduct was willful, intentional, and malicious.

28. As a direct and proximate result of Holmes's conversion in violation of the common law and statutes of the State of Michigan, IMMO has suffered and will continue to suffer damages in an amount greater than $670,000.

29. Under MCL 600.2919a IMMO is entitled to recover three times the amount of actual damages it sustained as a result of Holmes's conversion, plus costs and reasonable attorney's fees.

30. Holmes's conduct as set forth above constitutes "willful and malicious injury by the debtor to another entity or to the property of another entity" within the meaning of 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff IMMO US Corporation requests that this Court enter a money judgment in its favor and against Holmes in an amount greater than $670,000 plus treble

damages, hold that the amount of such judgment is non-dischargeable under 11 U.S.C. § 523(a)(6), and award IMMO all allowable costs, interest and attorney fees.

Dated:  October 2, 2014 　　　　　　　　　　　　　*/s/Andrea J. Bernard*
Andrea J. Bernard (P49209)
Warner Norcross & Judd LLP
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
616.752.2000
abernard@wnj.com
*Attorneys for Plaintiff IMMO US Corporation*

077016.160163 #11366424-1

6